McCAULEY et al. v. McELROY. (No. 741.)

(Court of Civil Appeals of Texas. El Paso. Nov. 1, 1917. Rehearing Denied Dec. 13, 1917.)

1. VENUE ⟨key⟩22(1)—PLACE OF DEFENDANT'S RESIDENCE—"TRESPASS."

Since Rev. St. art. 1830, authorizes suits to be brought out of the county of defendant's domicile, where the foundation is a trespass for which a civil action in damages may lie,

and since there are no accessories in trespass, but all parties concerned are principals, and a trespass is any unauthorized entry upon the realty of another to the damage thereof, where one defendant leased land to plaintiff, and the other three defendants were in possession of the land and refused to yield possession, their act, though an unauthorized entry, when not connived in by the lessor, did not make her a trespasser or a joint tort-feasor, and she was privileged to be sued in the county of her residence.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Trespass.]

2. VENUE ⟨⟩31 — JOINT DEFENDANTS — EFFECT.

Rev. St. art. 1830, subd. 4, providing that where there are two or more defendants residing in different counties suit may be brought in any county where any defendant resides, applies only where the cause of action as to all the parties is the same.

3. VENUE ⟨⟩21—BREACH OF CONTRACT—RESIDENCE OF DEFENDANT.

If a lessee has a cause of action against his lessor for breach of his lease, the lessor is entitled to be sued in the county of her residence.

4. LANDLORD AND TENANT ⟨⟩180(3) — WRONGFUL DISPOSSESSION — ACTION — PLEADING—SUFFICIENCY.

In action by a lessee for wrongful dispossession from land, the allegation that on account of the trespasses plaintiff was wrongfully deprived of the use and benefit of the land with its improvements, and prevented from raising a crop thereon, and thereby greatly damaged, was sufficient, as alleging a proper measure of damages.

5. DAMAGES ⟨⟩62(1)—DUTY TO MINIMIZE.

Where the lessee was deprived of possession by the wrongful act of third persons, it being his duty to use reasonable means to minimize his damages, the jury should determine what amount plaintiff earned, or by the exercise of reasonable effort he could have earned, in the same or a similar business elsewhere.

6. LANDLORD AND TENANT ⟨⟩180(6) — WRONGFUL DISPOSSESSION — MEASURE OF DAMAGES—QUESTIONS FOR JURY.

In the lessee's action for damages by wrongful dispossession. there being nothing to show whether he could under his lease sublet the premises, it was not error to refuse to submit whether he had arranged to sublet the premises.

7. TRIAL ⟨⟩192—INSTRUCTION — ASSUMING FACTS.

The authority of an agent being undisputed, it is not error for the court to assume such authority in his charge.

8. LANDLORD AND TENANT ⟨⟩180(6) — WRONGFUL DISPOSSESSION — MEASURE OF DAMAGES.

In the lessee's action for wrongful dispossession by third person, if he had agreed to sublet a part of the land to his sons, it was error to refuse to submit the question of damages, limited by the fact that he had so agreed to sublet the premises.

9. LANDLORD AND TENANT ⟨⟩180(4) — WRONGFUL DISPOSSESSION — MEASURE OF DAMAGES.

Value of pasturage upon land of which a lessee was wrongfully dispossessed by third persons was a proper element of damages.

10. DAMAGES ⟨⟩62(1)—MEASURE—TRESPASS.

It being incumbent upon plaintiff in his action for damages by wrongful dispossession of land to minimize his loss, his damages should be reduced by the amount that he made or could have made in using the same implements, machinery, etc., that he purchased, and would have used upon the land leased.

11. DAMAGES ⟨⟩221 — LANDLORD AND TENANT ⟨⟩180(4) — WRONGFUL DISPOSSESSION OF TENANT—MEASURE OF DAMAGES—SUBMISSION TO JURY.

While in the lessee's action for damages by wrongful dispossession by third parties, the expense to which he was put thereby is a proper measure of damages, the question submitted to the jury "what expense was he put to by reason of his failure to· get possession of the land" was too general.

12. JUDGMENT ⟨⟩256(2) — CONFORMITY TO FINDINGS.

In an action for damages by wrongful dispossession of the lessee. the finding of the jury that the lessor had not conspired with the dispossessors did not require judgment for all the defendants.

13. LANDLORD AND TENANT ⟨⟩180(1) — WRONGFUL DISPOSSESSION—LIABILITY—DEFENSES.

That the lessee who was wrongfully deprived of possession would have sublet part of the land is no defense to his action against the dispossessors, though it is a defense on the part of the lessor.

Appeal from District Court, Knox County; Jo A. P. Dickson, Judge.

Suit by E. A. McElroy against C. A. McCauley and others. Judgment for plaintiff, and defendants appeal. Reversed and remanded.

Smoot & Smoot, of Wichita Falls, and Williams & Neethe, of Galveston, for appellants. Brookreson & Howell, of Benjamin, for appellee.

HARPER, C. J. Appellee, McElroy, brought this suit in the district court of Knox county against C. A. McCauley and P. G. Cooley, of Knox county, Will Avants, of King county, and Mrs. Eliza Kempner, of Galveston county, the said ·Kempner doing business under the trade name of H. Kempner.

It was alleged that in September, 1915, Mrs. Kempner was the owner of two tracts of land situated in Knox and King counties, aggregating 740 acres, and on September 28, 1915, plaintiff rented said lands from her by an oral contract, Mrs. Kempner acting through her agent, E. C. Couch; possession of said lands to be given as soon as the crops growing thereon could be harvested, and not later than January 1, 1916; that relying upon the contract, he incurred a large expense in preparing to cultivate a crop upon said land; that after he had so rented the land, and some time during the fall of 1915, defendants, acting together, formed some kind of a fraudulent agreement or conspiracy to withhold the possession ·of the land from plaintiff, and to deprive him of the use and benefit thereof, and to prevent him from cultivating and raising a crop thereon during the season of 1916; that in accordance with such unlawful and fraudulent agreement and in disregard of the plaintiff's rights in and to said lands under and by virtue of his

rental contract, and with full knowledge upon the part of each of the defendants of his rental contract, the said C. A. McCauley, acting together with, and under authority from, Mrs. Kempner, entered upon 100 acres of the land and unlawfully withheld the same from him and refused him the possession thereof and the defendants, Avants and Cooley, acting together with, and under authority from, Mrs. Kempner, unlawfully entered upon 640 acres of land, and unlawfully took possession of the same and refused to allow plaintiff to take possession thereof and use and cultivate the same under his rental contract, with the exception, however, of 100 acres, with one tenant house thereon which they also attempted to withhold from him and the possession of which he was able to obtain only after considerable trouble and expense; that on account of said wrongs, injuries, and trespasses, all of which were committed in Knox county by the defendants, acting jointly, plaintiff was wrongfully deprived of the use and benefit of 640 acres of the land with improvements thereon, and prevented from raising a crop thereon for the 1916 season and thereby greatly damaged.

Judgment was sought against the defendants, jointly and severally, for his damage in the aggregate sum of $10,360. Mrs. Kempner filed a plea, setting up her privilege to be sued in Galveston county. The cause coming on for trial, Mrs. Kempner first presented her plea of privilege, and the appellee demanded that the issues of fact raised by the plea be submitted to the jury, along with the main issues in the case. The court thereupon overruled the plea of privilege and the cause proceeded to trial upon its merits. After the evidence had all been introduced, Mrs. Kempner again renewed her plea of privilege and the same was again overruled by the court. Judgment was entered in favor of McElroy against the defendants, jointly and severally, in the sum of $3,491.50, from which this appeal is perfected.

[1] The first assignment of error presented by the appellant Mrs. Kempner relates to the action of the court in overruling her plea of privilege. If there is any authority for the prosecution of this suit in Knox county, it is found in the ninth subdivision of article 1830, R. S., which authorizes suits to be brought out of the county of the defendant's domicile, where the foundation of the suit is some crime, or offense, or trespass, for which a civil action in damages may lie, in which case the suit may be brought in the county where such crime, or offense, or trespass was committed. It thus becomes necessary to inquire what is the foundation and nature of the liability of Mrs. Kempner under the facts recited. If she committed a trespass in Knox county in person, or was a party to a trespass committed in Knox county by personal representative, then her plea of privi-

lege was properly overruled. In determining whether or not she was guilty of a trespass, it becomes pertinent to inquire what were the respective rights and obligations of the parties under the rental contract executed by her to plaintiff, for if there was any trespass within the meaning of the statute quoted, it was committed in connection with the leasehold interest acquired by McElroy in the Knox county land. The principal covenant on the part of the landlord in a rental contract is that his tenant shall have the quiet enjoyment and possession of the premises during the continuance of the term, and an engagement to this effect on the part of the lessor is always implied, unless such implication be excluded by the express provisions of the contract. 1 Taylor's Landlord & Tenant (9th Ed.) pars. 45, 304; 24 Cyc. 1057, 1058. This covenant, whether express or implied, means that the tenant shall not be evicted or disturbed by the lessor or by persons deriving title from him. 1 Taylor's Landlord & Tenant, pars. 176, 305, 307. The entry by McCauley, Cooley, and Avants breached the covenant for quiet enjoyment implied in Mrs. Kempner's lease to McElroy, but the jury has found that she in no wise participated in the entry of her codefendants, and did not participate with them in withholding possession from McElroy. A trespass has been defined as "any unauthorized entry upon the realty of another to the damage thereof." 3 Bouvier's Law Dictionary, Rawle's Third Revision, p. 3316. In 38 Cyc. 994, it is said:

"Direct injury to realty of another is a trespass as is any wrongful interference with possession."

Mr. Taylor, at paragraph 765 of his work quoted above, says that the right to land is exclusive, and every unwarranted entry by a person on the land of another without the owner's leave, unless by authority of law, is a trespass.

The defendants McCauley, Cooley, and Avants were in possession of the lands on January 1, 1916, and refused to yield possession to the plaintiff. This constituted an unauthorized entry upon realty belonging to plaintiff to his damage, and was undoubtedly a trespass on the part of McCauley, Cooley, and Avants. There are no accessories in trespass, but all who are concerned with a trespass in any manner are principals. 26 Am. & Eng. Ency. Law (1st Ed.) p. 580; Olsen v. Upsahl, 69 Ill. 173. So, if Mrs. Kempner in any manner participated in the unlawful entry by McCauley, Cooley, and Avants, then she would be a principal in the trespass, a joint tort-feasor; but the facts found by the jury and the record as a whole fail to disclose any act, conspiracy, or agreement of any kind upon her part, which would directly connect her with the acts of McCauley, Cooley, and Avants. The jury has expressly found that she did not in any wise conspire with them, which is the ground alleged in

the petition for the purpose of fixing venue in Knox county. They were not her agents, but were acting strictly for themselves. We therefore hold that the evidence in the record shows no trespass has been committed by her in Knox county, and that therefore her plea of privilege to be sued in Galveston county should be sustained.

This view is upheld by the cases of Hilliard Bros. v. Wilson, 76 Tex. 180, 13 S. W. 25, and Wettermark v. Campbell, 93 Tex. 517, 56 S. W. 331. In the last-mentioned case, Hilliard v. Wilson is reviewed by Judge Gaines, who says:

"There, the sheriff was sued for the illegal and oppressive execution of a writ of attachment, and the plaintiffs in attachment, L. & H. Blum, were made codefendants, it being charged that the attachment was wrongfully issued and that they instigated the acts of the sheriff. The defendants, L. & H. Blum, being residents of another county from that in which the attachment was levied and the suit was brought, pleaded the privilege of being sued in the county of their residence. The court charged the jury, in effect, that if they instigated the illegal acts of the sheriff, they were liable to suit in the county where the levy was made; but, if not, the suit as brought could not be maintained against them. It was held and, as we think, properly, that the charge was correct. If the sheriff acted oppressively, he and all who instigated the trespass were properly sued in Burleson county, where it was committed. But the attachment was sued out in Galveston county, and it was there that the Blums resided. Hence, for simply suing out the attachment wrongfully, they could only be sued in that county."

In the case at bar, the act of Mrs. Kempner in executing the lease corresponded to the act of the Blums in suing out the attachment. Simply executing a subsequent lease in Galveston county would no more confer venue upon the district court of Knox county against the defendant Mrs. Kempner than the simple suing out of the wrongful attachment in the Hilliard-Wilson Case would confer venue upon the district court of Burleson county over the defendants Blum, who resided in Galveston county.

In Wettermark v. Campbell, supra, venue in Nacogdoches county was upheld against the defendant Adoue upon the ground that he was a party to a trespass committed by the sheriff in Nacogdoches county, because his attorney was present and participated in the trespass committed by the sheriff. Judge Gaines plainly intimates that if it had not been for this direct participation, through his attorneys, in the acts done in Nacogdoches county, that Adoue could not be sued in that county against his consent. This is the language:

"And it may be that in this case, if Adoue, had not been charged with a direct participation through his attorneys in the acts done in Nacogdoches county, he could not be sued in that county against his consent."

[2, 3] Appellee urges that the suit is maintainable in Knox county under subdivision 4 of article 1830, R. S., which reads:

"Where there are two or more defendants residing in different counties, in which case suit may be brought in any county where any one of the defendants reside."

This subdivision applies where the cause of action as to one party is the same as that against the others. Stephens v. First National Bank of New Boston, 146 S. W. 620, so when the question was submitted whether defendant Kempner was a joint tort-feasor with the other defendants and determined that she was not, then her plea of privilege must be sustained. Railway Co. v. Mangum, 68 Tex. 342, 4 S. W. 617. And if there be a cause of action for breach of contract, she is entitled under the law to be sued in Galveston county, where she resides.

The disposition made of Mrs. Kempner's contention that her plea of privilege should have been sustained renders it unnecessary to pass upon the other assignments (third and fourth) presented by her, which complain of overruling of exceptions to the petition. What is hereafter said relates to the assignments of the other appellants.

[4] The fifth, sixth, and seventh urge that the petition is subject to the special exceptions filed because it does not allege a proper element or measure of damages—are not tenable.

The eighth complains of refusal to give peremptory charge for defendant Kempner, disposed of by the observations under first assignment; i. e., since the plea of privilege to be sued in Galveston county should be sustained, no judgment could be rendered for her in that (Knox county) court.

[5] The ninth asserts error in refusing to give special charge requested by defendant:

"What amount did the plaintiff earn or by the exercise of reasonable effort could he have earned during the crop year 1916–17 by engaging in the same or similar business?"

Upon another trial, if the facts justify it, this charge should be given, because it is the duty of parties suffering injury to use reasonable means to minimize the damages likely to accrue because of wrongful acts of another.

[6] The tenth complains that the court erred in refusing to charge the jury that, if Couch, as agent, executed the rental contract to plaintiff as charged, and it further appeared from the evidence that plaintiff contracted to sublet the premises or a part of them, their verdict should be for the defendant. The pleadings and proof are not clear as to whether plaintiff was permitted to sublet under his contract—it was therefore not error to refuse the charge.

[7] The eleventh and nineteenth charge error in submitting the question of Couch's authority as agent to lease the premises to plaintiff. The question of Couch's authority is evidenced by letters and is undisputed. A proper construction thereof, for the court, is that he had such authority, and the court could properly have assumed it in his charge. This disposes of the twelfth and thirteenth,

which complain that the court in his charge assumed that Couch had authority as agent.

[8] The fourteenth charges error in giving the charge:

"What would the costs of cultivating, planting, harvesting, and marketing of the crop in the 450 acres of land have been to McElroy?"

The proposition is:

"The plaintiff, McElroy, would not be allowed to recover damages for the failure to deliver to him the entire tract of 550 acres of land claimed to have been rented to him, when it was shown by the uncontradicted testimony that 200 acres of such land was rented for the benefit of plaintiff's sons who were not parties to the suit and who were to have full use and benefit thereof, and a special issue calling for a finding on the amount of damages in favor of plaintiff, for the full amount of said land would be immaterial and improper."

The fifteenth is to the same effect and is well taken. The evidence is undisputed that plaintiff had agreed to sublet 200 acres to his sons, so the measure of his damages would not be the same as to this acreage as the acreage to be cultivated by himself. These assignments must therefore be sustained.

[9] The sixteenth complains that it was error to submit the question of the value of the pasturage to plaintiff of that portion of the land not in cultivation. Overruled, because this is a proper element of damages.

[10] The seventeenth objects to the charge:

"How much did McElroy make with the implements, machinery, tools, teams, and labor that he would have used in cultivating, harvesting, and marketing of the crops on the land in question had he gotten possession of same during the time he would have been in such cultivation, planting, harvesting, and marketing?"

This is a proper issue in the case, for it was incumbent upon plaintiff to minimize the loss to him by reason of the stock, tools, etc., on hand for cultivating the acreage leased by using them for other purposes, if he could, after he found that his contract of lease was breached, and the trespass and taking of a part of the premises would prevent him from using them upon the land leased.

[11] The eighteenth objects to the charge:

"What expense was McElroy put to by reason of his failure to get possession of the land and the arrangement with Couch?"

The charge is not subject to the criticism made by appellant that "it is not a proper measure of damages," but in view of another trial we think the question too general. The record discloses that he purchased farm machinery, etc., which he could not use in view of the limited number of acres he finally received possession of, but he would not be entitled to recover the full amount paid for such machinery, for it is yet of value and might be worth as much or more than he paid for it, and he might have used it at a profit, etc. This is a proper issue in the case, made so by the pleadings, but the charge as given is not sufficiently comprehensive.

[12, 13] The twentieth complains of the finding of the jury that McElroy earned $190 with the tools, etc., that he would have used in the cultivation of the crop on the ground; that it is not supported by the evidence. This being a proper issue for the determination of the jury, we make no other comment.

The twenty-first and twenty-second urge that because of the answers of the jury that the "defendants had not conspired together to deprive the plaintiff of the use of the premises," and that "plaintiff had breached his contract by subletting a part of the land," the court should have rendered its judgment in favor of defendants. In view of the record as it appears here, we cannot agree with appellant that the jury intended or did find that there was no conspiracy between any of the parties defendant, but it is apparent that they only intended to find that Mrs. Kempner did not conspire with the other defendants. Besides, the fact that plaintiff would have sublet a part of the land constitutes no defense to his action against McCauley, Cooley, and Avants for the trespass committed by them upon his leasehold interest. And as to the subletting as indicated above, the pleading and evidence do not affirmatively show that a subletting was prohibited by the lease contract. This disposes of the twenty-third and twenty-fourth which are to the same effect.

For the reasons above indicated, the cause is reversed and remanded.

WALTHALL, J., concurs in the result.