### LEE v. McCLAIN et al. (No. 544.)

(Court of Civil Appeals of Texas. Beaumont. Feb. 13, 1920. Rehearing Denied March 24, 1920.)

TRESPASS ☞8, 57—LENDER RETAKING HORSE FROM BORROWER'S PREMISES HELD LIABLE FOR NOMINAL DAMAGES.

Where plaintiff bought horses from a defendant, and they ran away, so that one was crippled, and defendant lent another to plaintiff to take his place, and thereafter, without plaintiff's consent, entered upon plaintiff's premises with an officer from another county and two other friends, and with threatening language took the horse from his possession, defendants were guilty of a trespass, and are liable at least for nominal damages.

Appeal from District Court, San Jacinto County; J. L. Manry, Judge.

Suit by Jesse Lee against W. F. McClain and others. From judgment for defendants plaintiff appeals. Reversed and remanded.

Wm. McMurrey, of Cold Springs, for appellant.

M. W. Harrell, of Cleveland, for appellees.

WALKER, J. This suit was instituted in the district court of San Jacinto county by the appellant, Jesse Lee, against the defendants, W. F. McClain, D. H. Handley, John Shares, and B. Dominey, for damages, both actual and exemplary. The court tried the case without the intervention of a jury, and rendered judgment for the defendants. On motion of plaintiff, he filed conclusions of fact and law.

Jesse Lee bought a pair of horses from the defendant McClain, as claimed by him, under a warranty that they were safe and well broken to work. McClain was a horse dealer in the town of Cleveland. Lee took his horses home, and after working them a few days they ran away. One of them was crippled and his wagon was torn to pieces. He went to see McClain about his troubles, and McClain loaned him another horse to make up his team. McClain testified that this loan was only temporary, or until he wanted the horse; but it was the claim of plaintiff that he was to have the use of this horse until his crippled horse was broken and trained to work. After a few days McClain had an opportunity to sell the horse he had loaned plaintiff, and sent one of his employés after him. Plaintiff refused to surrender the horse. Thereupon he, together with the other defendants, went to the home of plaintiff and took possession of the horse. This suit for damages grows out of this transaction.

McClain testified in part as follows:

"My name is W. F. McClain. I live at Cleveland, in Liberty county, Tex. * * * I have been dealing in horses and mules principally. * * * I had some dealings with Mr. Lee as to selling him a horse. * * * Mr. Lee came in and wanted a pair of certain horses I had. I told him to try them and he took them and drove them all around there to see whether he would like them or not. * * * I went up to the lot and turned them over the horses; he hitched them to drive them again and they went off perfectly satisfactory. No; I did not guarantee those horses. I let him try them himself to see whether he wanted them or not. * * * Well, I would not be positive how long, but it appears to me it must have been 10 or 12 days he came back there to me, says, 'One of them horses I got from you ran away and crippled himself,' and wanted me to change him another horse for it. * * * He kept whining around there about it terrible. I says, 'Well, now here, I won't trade, but I have got a big horse weighs about 1,300.' I says, 'He is not broke, but if you are mind to take him and try him out you can use him until I need him.' 'Well,' he said, 'that would be a great favor to me;' and they hitched the horse up and drove him around and saw that he went off all right. Then it was a man came and wanted to buy this certain horse and another one that Lee had and get one I had at home, and I sends a man * * * after that horse, * * * and he sent word he was going to keep that horse. I should not have him at all. I told the fellow to tell him to send my horse and if he had any doubt about it I would loan him a mule a few days until things got right, and he said he didn't want the mule but he was going to keep that horse; that I would never get him. I then got in a buggy and drove up there and put a rope on my horse and led him home; he was mine and nobody had any right to him. Mr. Handley was in the crowd that went with me, also Mr. Dominey and those other men; we were all there together. I heard that fellow had made threats and I just asked Mr. Handley as a friend to go along to see they did not use any foul play; they had a

hard name, and I asked him to go along. He had not authority as an officer, but just went along to see there was no foul play, and he went on up there with me, and when I got up in sight this man who was on the stand had the horse to the hind wheel of the wagon dragging a lot of poles and had a frail and was frailing the horse pretty bad, and that did not suit me much and I purposes to bring him home. I did not use any loud or indecent language to him. I never spoke but one word, he (Lee) says to me, says, 'You got no right to take the horse.' I says, 'I will show you whether I have or not;' and I says, 'I come after my horse and I will show you I will get him.' Neither one of the other parties who were with me used any loud language or did any cursing or anything of the kind. There wasn't but one curse word swore. Mr. Lee there saw I would have to take the horse and he said I was a ―― thief ――, and that was the only oath swore. * * * I went to Mr. Handley and asked him as a friend to go up there with me to see there was no foul play; I heard some bad threats; claimed they were bad medicine, and, of course, I did not want to go up there just alone. I did not take any papers along or nothing at all, for I did not think I needed them; it was my horse, and I thought I had a perfect right to go and get him. I did not go to Mr. Harrell here (of counsel for defendants), who is a justice of peace down there, for some papers. Mr. Harrell said he was in a different county and he had no right to issue papers in that county. I thought I would go and sequester the horse. I did not want to go off and run up some expenses for nothing, because I knew I had a perfect right to go and get my own property. Mr. Harrell did not tell me I would have to go to Shepherd to get papers out there."

### Defendant Handley testified:

"My name is D. H. Handley. I live at Cleveland, in Liberty county, Tex. * * * Mr. McClain came to me and asked me on the day before we went up there if I would go with him and get a horse that belonged to him. * * * He said it was at Westcott; a fellow named Jesse Lee had a horse up there that belonged to him. I says: 'Mr. Mac, you don't need me to go along, do you? What for?' He says: 'Well, there has been some threats made up there and I want some one to go with me to see that nobody don't hurt me in any way. I am an old man.' 'Well,' I says, 'you understand, Mr. Mac, Mr. Lee is out of my jurisdiction, if you are taking me as an officer;' I says, 'I am constable here at precinct No. 6, Liberty county.' He says, 'Well, I don't want any officer to go along at all.' * * * Well, we went on and went to Westcott, and Mr. McClain saw two horses to a wagon and says, 'That sorrel, that is the horse I am after;' and we went on down to where this fellow was driving. I says, 'Is that Lee driving? He says, 'No;' says, 'I don't know who that is.' He went on up. I never said anything to him then. I just said, 'Mr. Mac, that is your horse, your business; I just come along with you;' and he says, 'All right, I will go get the horse;' so he went down and spoke to this gentleman setting here (referring to Mr. Campbell, who had previously testified in the case), says, 'I come after that sorrel horse; he is mine and I want him.' Mr. Campbell says, 'It will be a great

favor to me, Mr. Mac, if you will let me take him down to the man I got him from;' and Mr. Mac says, 'I don't know about that; I haven't got time to fool around;' and the fellow turned around and drove on, on out across the public road. * * * on down to Mr. Lee's house. Mr. McClain said one time between the railroad and Mr. Lee's house, says, 'I don't believe I want to go any further;' but this fellow kept driving, says, 'It will be a great favor to me to let me turn this horse over to Mr. Lee where I got it from.' Mr. Mac says, 'It wouldn't make any difference; it is mine anyway;' so we drove on down, just drove outside the right of way gate * * * and stopped the team and Mr. McClain went to take the horse out, started to take the horse out, and Mr. Lee came out about that time and Mr. Campbell says, 'This gentleman has come after that sorrel horse;' and Mr. McClain just started to take the harness off, and Mr. Lee says, 'Hold on, Mr. McClain, don't do that, this talk;' and he says, 'I haven't got time; I am in a hurry;' or something to that effect, and he proceeded to take the harness off the horse, and Mr. Lee turned around to me, and says, 'This gentleman here, I know, is an officer.' I says, 'Yes; in Liberty county;' and he turned around and said, 'I don't care anyway.' I says, 'I am a man as well as anybody else;' I told him, I says, 'Mr. Lee, I did not come here as an officer or anything; I have got no papers to serve on you or to get in bad; but Mr. McClain come after the horse.'"

This is practically all the testimony offered by the defendants. The plaintiff's testimony differs as to the terms of the contract under which he secured the possession of the horse, but as to the other circumstances there is very little difference.

The court's conclusions of law and fact are as follows:

### "Findings of Fact.

"I find that on or about the ―― day of ――――, 1919, the defendant W. F. McClain loaned to plaintiff, Jesse Lee, a certain horse, with the understanding and agreement that plaintiff was to retain possession of said horse and use the same until called for by said defendant; that plaintiff kept said horse and used same until about the 4th day of April, 1919, when defendant W. F. McClain, in company with the other defendants, S. Dominey, D. H. Handley, and John Shares, went to the home of the plaintiff to get said horse; that they found the horse being worked to a wagon by one A. B. Campbell; that without molestation on the part of plaintiff the defendant W. F. McClain unharnessed said horse and took it away; that in doing so the defendant McClain, nor the other defendants, B. Dominey, D. H. Handley, and John Shares, who accompanied said defendant W. F. McClain, did not curse or abuse the plaintiff in any manner, and used no manner of force or violence to get possession of said horse, and did not threaten or intimidate the plaintiff, Jesse Lee, in any manner; that the defendant D. H. Handley, at the time he accompanied the defendant W. F. McClain and the other defendants to the home of plaintiff in San Jacinto county, Tex., to take possession of said horse belonging to the defendant W. F. McClain, was not an officer in said San Jacinto county, but

was the constable of precinct No. 6, in Liberty county, Tex., and did not accompany the defendant W. F. McClain in the capacity of an officer, but that he went along only as a friend of said McClain. I find from the evidence that plaintiff, Jesse Lee, sustained no damage either in his right of possession of said horse, nor in any other way, and that there was no act or conduct on the part of the defendants that could result in any damage to the plaintiff in his feelings or in his right to the possession of said horse.

"Conclusions of Law.

"I therefore conclude from the evidence, as a matter of law, that there was no proof as a basis of any damages whatever to plaintiff, and no proof to support any cause of action against any of the defendants; and, so concluding, I here render judgment in favor of all the defendants."

The appellant's first assignment of error is as follows:

"The court erred in concluding from the facts found by the court that plaintiff was not entitled to recover any damages for the acts of defendants. From the finding it is seen that the defendants, in going on the premises of plaintiff without his consent and taking said animal, invaded the rights of plaintiff, for which defendants are liable to plaintiff in at least nominal damages for the wrong."

The second assignment of error is as follows:

"The court erred in concluding as a fact that defendants went peaceably to plaintiff's home without molestation on the part of plaintiff; such finding being against all the testimony, both of plaintiff and defendant, adduced on the trial of the case, and all the testimony showing conclusively that defendants went to plaintiff's home and forcibly took from plaintiff's possession the said horse, over the protests of plaintiff."

In entering upon plaintiff's premises and in taking this horse from the possession of plaintiff, under the facts as related by defendant and his witness Handley, all these defendants were guilty of a trespass.

In Bassham v. Evans, 216 S. W. 446, Chief Justice Huff, speaking for the court, said:

"Every unauthorized entry upon the land of another is a trespass, and it is a willful trespass if intended and deliberate." McCarthy v. Miller, 57 S. W. 973; Ripy v. Less, 55 Tex. Civ. App. 492, 118 S. W. 1084; McCauley v. McElroy, 199 S. W. 317.

From the defendant's own testimony this entry upon the plaintiff's premises was unauthorized, and was willful, intended, and deliberate. Though, as found by the trial court, the loan of the horse to plaintiff was only temporary, yet McClain had no right to try this issue himself. Hence when he went after this horse that plaintiff was claiming he was trespassing upon plaintiff's premises. The law of the land provides tribunals for trying such issues, and McClain was not authorized to take possession of this horse under the circumstances related by him. As said by Justice Fly in McVea v. Walker, 11 Tex. Civ. App. 46, 31 S. W. 839:

"The owner of property has no right to forcibly take possession of his own property that is in the lawful possession of another. Dozier v. Pillot, 79 Tex. 224, 14 S. W. 1027."

The trial court, as we have seen, found:

"That without molestation on the part of the plaintiff the defendant W. F. McClain unharnessed said horse and took it away; that in so doing the defendant McClain * * * did not curse or abuse the plaintiff in any manner, and used no manner of force or violence to get possession of said horse, and did not threaten or intimidate the plaintiff, Jesse Lee, in any manner."

This finding is not sustained by defendants' testimony.

In Gillett v. Moody, 54 S. W. 35, Chief Justice James said:

"Three points are presented by appellant's briefs: (1) That the court charged that if the manner of the defendant or his employés in taking the goods was insulting, and the taking was by threats and in an insolent manner, then, in addition to the actual damages, if any, the jury might find punitive damages, when there was no issue made by the pleadings or testimony that the taking was by threat or in an insolent manner. In our opinion, the issue was presented, and the charge was correct, though the term 'insolent' may not have been used in the pleading or evidence. There was testimony that when plaintiff refused to admit the parties, who announced that they had come for the furniture, one of them said he would show her whether or not they would take it, and proceeded to force in the door. The above language, under the circumstances, was clearly a threat."

The language used by McClain, under the circumstances, he having with him an officer from another county and two other friends, was stronger than the language which Chief Justice James held to constitute a threat.

In Loftus v. Maxey, 73 Tex. 242, 11 S. W. 272, the following charge was approved:

"If the proof satisfy you that the defendants, or either of them, or some one acting for them and in their employ and under their command, did take and remove the bed as alleged in the plaintiff's petition, without the consent of Sallie Maxey, and if the manner of defendants, or either of them, in the taking was by threats, or in an insolent, overbearing, and insulting manner, done in such a way as would naturally outrage the feelings of plaintiffs, then you will find for plaintiffs for such an amount as you may deem proper and adequate; for if you so find the facts the law allows the jury to affix such an amount as in the opinion of the jury such wrongful acts call for; such damages are called vindictive damages or smart money."

From the testimony of the defendant it appears that plaintiff's feelings were outraged. We must hold that in wrongfully going upon plaintiff's premises, with an officer from an-

other county and two other friends, with the express determination of taking possession of his horse, as voiced both to his friends and to the plaintiff, McClain's conduct· was, to say the least, overbearing. We believe that, under the case just cited by us, plaintiff was entitled at least to nominal damages, and that the trial court erred in rendering judgment against him.

For the errors discussed, this cause is reversed and remanded.